ARTHUR J. WHALEY and Another, Plaintiffs, *v.* COUNTY OF MONROE and Others, Defendants.

Fourth Department, May 4, 1932.

*Daniel J. O'Mara,* for the plaintiffs.

*John Van Voorhis,* for the defendant Town of Irondequoit.

*James E. Cuff [Thomas D. Lynch* of counsel], for the defendants County of Monroe and Harry J. Bareham, county treasurer.

CROSBY, J. This is a controversy submitted on an agreed statement of facts. The questions to be answered are four in number, as follows:

1. Does article 7-A of the Tax Law authorize the county of Monroe to purchase land at the foreclosure sale provided for therein?

2. Does article 7-A of the Tax Law authorize that portion of the said resolution of the board of supervisors of Monroe county, adopted March 2, 1932, which directs the county treasurer to bid and pay for said land enough to cover all tax liens including that portion of the taxes or assessments against said land levied for town purposes including principal and interest on bonds of said town issued for special improvements?

3. Is article 7-A of the Tax Law in so far as it authorizes the county of Monroe to bid and pay for said land money to be used to pay that portion of the taxes and assessments levied against said land to raise money for town purposes, including principal and interest on town bonds issued for special improvements, constitutional in view of section 10 of article VIII of the New York State Constitution?

4. Should the defendant Harry J. Bareham, as county treasurer of the county of Monroe, be restrained from performing any or all of the acts enjoined upon him by said resolution of the board of supervisors of Monroe county, adopted March 2, 1932?

The stipulated facts show, among other things, that the plaintiffs are taxpayers interested in the expenditure of the county's moneys; that in 1929 taxes were levied upon lands in the town of Irondequoit, in the usual and regular way, for the purpose of raising money to pay the expenses of the town's budget as well as the amounts necessary for State and county purposes; that the town tax collector collected less than enough to pay the town's budget, and made return of the uncollected taxes to the county treasurer; that the county treasurer thereafter sold certain lands in said town on which the taxes had not been paid for the unpaid taxes and expenses connected with such sale, and bid the same in for the county.

It further appears, by the stipulation, that, by a resolution of the county board of supervisors, the county treasurer has been directed to foreclose the lien on said lands which the county has

by reason of having bid in the same at the tax sale, pursuant to article 7-A of the Tax Law (added by Laws of 1930, chap. 809, as amd.), and that the county treasurer is further directed to bid for said lands, at the foreclosure sale, the full amount of the unpaid taxes, plus expenses.

Plaintiffs complain that, since the town collector did not collect enough money on the tax roll to pay even the amount of the town's budget, and, therefore, the town is interested in the prospective proceeds of the foreclosure sale, the effect of carrying out the resolution will be to compel the county to give its credit to the town of Irondequoit, contrary to section 10 of article VIII of our Constitution, because it is also stipulated that the county "has no money wherewith to pay * * * and * * * will be obliged to borrow money " to meet the demands of the bid on such foreclosure sale.

No fault is found with the procedure by which the taxes were assessed and levied; we are to assume that everything connected with these taxes has been done regularly according to law. Plaintiff's only complaint is that article 7-A of the Tax Law is unconstitutional in that it requires the county to incur indebtedness for the benefit of the town of Irondequoit, and for other than a " county purpose."

Plaintiffs rely upon the case of *Village of Kenmore* v. *County of Erie* (252 N. Y. 437), where it was held that certain provisions of the Village Law were unconstitutional in so far as they required the county of Erie to lend its credit to an incorporated village. The basis of that decision is that villages are voluntary municipal corporations that use their money, raised by taxation, in the exercise of corporate functions beyond mere governmental functions. Towns, however, are involuntary political units of counties, which, in turn, are involuntary political units of the State. Their functions are almost exclusively governmental. Furthermore, the law has created no means by which a town can collect unpaid taxes, otherwise than by returning the same to the county treasurer, who, alone, is given the means, and charged with the duty, to sell the land and bid in the same for the county. The following dictum from the opinion of the Court of Appeals in the *Village of Kenmore Case* (*supra*) is in point: " School districts are, like counties, governmental subdivisions of the State, though their governmental function is confined to education. The State uses the machinery of county government to supplement the machinery of the school districts where the latter proves inefficient in the collection of school taxes. * * * These provisions of the law are perhaps in many respects analogous to the provisions of the Village Law

now under consideration. Not in all. In the one case a burden is placed upon the county and all its inhabitants to assist a subordinate governmental subdivision in the exercise of a power and the discharge of a duty of local government. Moneys paid to a school district may be used for no other purpose, and since that purpose is governmental, it is a county purpose."

We think the same reasoning applies to towns as to school districts, and that the county of Monroe will be serving a county purpose in buying the land in question on foreclosure sale, even though the town of Irondequoit may have an incidental interest in the proceeds realized on the sale, for the stipulated facts do not disclose that the money that will be paid to the town of Irondequoit out of the proceeds of the foreclosure sale is to be used for anything other than governmental purposes.

A question, not raised in the briefs, is suggested by the fact that the owner of the lands to be sold has until August 20, 1932, in which to redeem the lands from the tax sale. Thus the controversy here submitted may never arise — the owner, in other words, may redeem. The situation is one that calls for a declaratory judgment, at least, and as both sides choose to treat the matter as a genuine existing controversy it is proper to settle the matter by answering the questions submitted.

Questions numbered 1, 2 and 3 above should be answered " Yes," and question numbered 4 should be answered " No," and appropriate judgment ordered accordingly, with costs.

All concur.

Controversy determined in favor of the defendants and declaratory judgment granted accordingly, with costs.