TOWN OF AMHERST, Appellant, *v.* COUNTY OF ERIE and Others, Respondents.*

Fourth Department, June 29, 1932.

---

* See 143 Misc. 540; affd., 260 N. Y. 361.

*Carlton E. Ladd,* for the appellant.

*George L. Grobe* [*M. Edwin Merwin* of counsel], for the respondents.

*John J. Bennett, Jr., Attorney-General* [*F. Raemond Chant, Deputy Assistant Attorney-General,* of counsel], *amicus curiæ* for the State Comptroller.

*Charles L. Feldman, Corporation Counsel* [*Herbert A. Hickman* of counsel], *amicus curiæ* for the City of Buffalo.

*John Van Voorhis, amicus curiæ* for the Town of Irondequoit.

CROSBY, J. Plaintiff, being one of the towns of Erie county, brought this action against the county of Erie and its board of supervisors and its treasurer to compel them to take the necessary steps, provided by the Tax Law applicable to the county of Erie, to raise the amount of money necessary to pay to plaintiff the amount of its budget for the year 1931, and to pay the same to plaintiff. It seems that for the year 1931 the town collector of the plaintiff collected less, by $205,141.41, than enough to pay the plaintiff's town budget. No claim is made that the tax was not properly assessed and levied, and it is conceded that the actual collections made by the town collector were less, by the amount stated, than enough to give the plaintiff the amount required to meet town expenses, and that the uncollected taxes were properly returned to the county treasurer. Defendants took the position that, of the taxes collected on the town's tax roll, the town collector should pay to the county treasurer an amount thereof proportionate to the county's share of the total levy for the town,

so that town and county would suffer proportionately the result of any uncollected taxes. Plaintiff maintained that, out of the aggregate amount collected by the town collector, there should first be paid to the town supervisor enough to meet the town's budget, as shown on the roll, and if not enough was collected to do that, the county should make good the deficit to the town, and that the county should obtain the amount of the town's deficit as well as the amount needed for itself (and the State) by selling the properties, on which taxes were not paid, at tax sale. The trial court adopted the view advanced by defendants, dismissed plaintiff's complaint, and gave defendants a judgment against plaintiff for $21,964.49 and interest and costs.

The trial court did not consider the constitutional question involved in the case of *Whaley* v. *County of Monroe* (235 App. Div. 334), recently decided by this court. The trial court placed its decision upon the peculiar wording of the special statute applicable to Erie county which differs, in wording slightly from the general Tax Law. The general Tax Law (§ 59, as amd. by Laws of 1926, chap. 286) provides that, of the moneys collected by the town collector, he shall pay:

" 1. To the supervisor of the town, all the moneys *levied* therein for the support of highways and bridges, moneys to be expended by overseers of the poor for the support of the poor and moneys to defray any other town expenses or charges.

" 2. To the treasurer of the county, the residue of the money so to be collected."

The Erie county law (Laws of 1884, chap. 135, § 4, as amd. by Laws of 1909, chap. 383) provides that " From the moneys so collected the collector shall pay, *first*, to the supervisor of the town such sum as shall have been *raised* for the support of highways and bridges therein, and returned highway taxes; *second*, to the supervisor of the town all moneys *raised* to defray other town expenses; *third*, to the treasurer of the county the residue of the moneys so collected."

The decision below proceeded on the theory that the word " raised," as above used, means " collected," so that the collector must apportion the tax moneys collected between the town and county in proportion to their several interests in the total tax levy. It seems to be conceded that in counties governed by the general Tax Law the town would first be entitled to receive from all the moneys collected the amount " levied " for its expenses. We do not think the word " raised," in the special act, differs in meaning from the word " levied " in the general act. " Collect " and " levy " are both given as definitions of the word " raise " in Webster's Dictionary. And if the moneys collected are to be

apportioned between the town and county, why does the Erie county special act provide that the town's share shall be " first " paid, and " to the treasurer of the county the residue " shall be paid? The order in which the two municipalities get their pay is of no moment whatsoever unless one is to get its share at the expense of the other's failure to get its share. And some force must be given to the fact that the county gets the " residue."

It was proven in this case, and it is indeed a matter of common knowledge, that for many years in all the counties, including Erie, it has been the unvarying custom for the town collector to pay the supervisor of his town the total of the town's budget before paying the county treasurer anything. The collector has always had a receipt from the county treasurer for the total amount represented by the tax levy, provided he made a proper return of such taxes as he did not collect. The so-called " return " furnished the basis for a tax sale by the county treasurer. In case of doubt, or ambiguity, in the law it is a well-known rule that the practical construction that has been given to a law by those charged with the duty of enforcing it, as well as those for whose benefit it was passed, takes on almost the force of judicial interpretation. (*McCarthy* v. *Woolston*, 210 App. Div. 152; *Bullock* v. *Cooley*, 225 N. Y. 566; *Grimmer* v. *Tenement House Dept.*, 205 id. 549; *Easton* v. *Pickersgill*, 55 id. 310; *People* v. *Charbineau*, 115 id. 433; *Matter of Washington Street A. & P. & R. R. Co.*, Id. 442.)

This rule is invoked, not on the theory that common usage can overcome the plainly expressed intention of the Legislature, but on the theory that the Legislature is deemed to be aware of notorious customs, and that its failure to interfere with them indicates legislative approval and acquiescence.

Other considerations fortify the belief that it was the intent of the law that the county should, as it were, underwrite the whole tax levy. The county alone is given the power to enforce collection and charged with the duty to do so. The county alone possesses the machinery for collection. This is done by tax sale. Theoretically every property is worth the amount at which it is assessed, and certainly many times the amount of the tax levied against it. The law must contemplate that the county cannot lose by taking the property for the tax which it has had to advance to the town. If no private bidder offers the amount of the tax, the law (Laws of 1884, chap. 135, § 15, as amd. by Laws of 1909, chap. 383) provides that the lands are to be " deemed to have been sold to and purchased by the county," thereby placing the land beyond the reach of the town, so that the town can never get its unpaid taxes by any means of its own. Means are provided by law whereby the county can per-

fect an absolute title. All these means for protecting itself from loss are denied the town. That the town has no interest in the property after its collector returns the unpaid taxes is indicated by the fact that the law does not mention the town in connection with the proceedings for selling the property or any of the proceedings subsequent to the return. It must be understood that all rights in and powers over the property are vested in the county from the time of the return onward.

It is urged, however, that, even though the special act applying to Erie county be interpreted to mean that the town should first get the amount of its budget out of the amount collected on the roll, so that the defendant cannot have judgment on its counterclaim, still the defendant cannot be compelled to forego receiving any share of the taxes and, in addition, make up to the town enough to balance its budget. There is much force in the argument made by defendants that many towns, including the plaintiff, have created great numbers of special tax districts, for lighting, for sewers, for pavements and sidewalks, and many other modern improvements equal to the best in modern cities, and have brought about a condition where they cannot collect enough tax to meet their own expenses, to say nothing of contributing to the support of the county and State. These special tax districts are created without any participation by the county by way of consent or otherwise. Yet the county as a whole is asked to support these extravagances. And the claim is made that some, at least, of the special tax districts are created as instruments for the exercise of corporate as distinguished from governmental functions.

It has been held that a law requiring a county to incur indebtedness for the benefit of a village, in making good for its unpaid taxes, is violative of section 10 of article 8 of our State Constitution. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437.) This court has held that where the question related to a town, rather than a village, the rule of the *Kenmore* case is not applicable. (*Whaley* v. *County of Monroe, supra.*) This court stands, therefore, committed to the proposition that a county may incur indebtedness to make good to a town what it lacks, in collected taxes, of enough to meet its town budget. Our decision was based on the fact that the record in the *Whaley* case did not disclose that the money that was going to the town was to be used for anything other than governmental purposes.

We are of opinion that the same is true in the instant case. It is a mistake to suppose that expenditures are non-governmental because extravagant and perhaps unwise. The question is: Were they made in the exercise of the business of government in preserv-

ing the health, good order and peace of the community? We find none of the functions performed by the special districts in this case outside the governmental category. If an abuse results in permitting towns, without any check or restraint by the county, to indulge in too many modern conveniences, usually enjoyed only by cities, the remedy must be furnished by the Legislature. Theoretically one would suppose that the expenditures would result in enhanced value of the real estate, and increased taxes paid thereby, so that the benefits enjoyed by property in the special districts would result in no loss to the rest of the county. But the economic difficulties of the times have brought about a condition never contemplated by the law.

We think that the purposes for which the moneys of the town of Amherst were to be used were all governmental, and that it is the duty of the county of Erie to pursue the means given it by law to obtain for the town of Amherst the amount necessary to make up its town budget.

As to the minor item of $378.49, with interest, for which judgment was awarded to the defendant by the lower court, we think the judgment below was correct. That item comprised returned school taxes which the county treasurer had advanced to school districts within the town of Amherst pursuant to the Education Law. Such returned school taxes were reassessed against the properties of the defaulting taxpayers for the purpose of reimbursing the county for its advancement to school districts. When collected these moneys belonged to the county and the town of Amherst had no interest in them.

The judgment, in so far as it dismisses plaintiff's complaint, should be reversed on the law, and in this respect judgment should be directed in favor of the plaintiff for the relief demanded in the complaint; and the judgment, in so far as it grants defendant a recovery for the sum of $21,971.81 and costs against the plaintiff, should be modified on the law by reducing the recovery to the sum of $378.49, with interest thereon from the 3d day of May, 1932, and as so modified affirmed, with costs of this appeal to the appellant.

All concur.

Judgment, in so far as it dismisses plaintiff's complaint, reversed on the law, and in this respect judgment directed in favor of the plaintiff for the relief demanded in the complaint; and in so far as it allows defendant a recovery for the sum of $21,971.81 and costs against the plaintiff, modified on the law by reducing the recovery to the sum of $378.49, with interest thereon from the 3d day of May, 1932 and as so modified affirmed, with costs of this appeal to the appellant.