TOWN OF AMHERST, Respondent, *v.* COUNTY OF ERIE
et al., Appellants.

362

(Argued October 14, 1932; decided January 10, 1933.)

*M. Edwin Merwin* and *George L. Grobe* for appellants. There is no authority, statutory or otherwise, imposing a liability upon the county of Erie for any deficit in the plaintiff's tax collections or for a deficit in the plaintiff's budget for 1931. (*Carroll* v. *McArdle*, 216 N. Y. 232; *Fulton* v. *Krull*, 200 N. Y. 105; *Moore* v. *Foot*, 32 Miss. 469; *State* v. *Security Nat. Bank*, 139 Minn. 162; *New York & Rosendale Cement Co.* v. *Davis*, 173 N. Y. 237; *Furey* v. *Town of Gravesend*, 104 N. Y. 405; *McKuskie* v. *Hendrickson*, 128 N. Y. 555; *People ex rel. McCann* v. *Kilbourn*, 68 N. Y. 482; *P. R. T. Co.* v. *Dash*, 125 N. Y. 93; *Commercial Bank* v. *Barnum*, 49 N. Y. 269; *Benton* v. *Wickwire*, 54 N. Y. 226; *Smith* v. *B. & R. R. R. Co.*, 99 App. Div. 94; 181 N. Y. 132; *Wells* v. *Johnston*, 171 N. Y. 324; *County of Lancaster* v. *Trimble*, 34 Neb. 752; *Town of Iron River* v. *Bayfield County*, 106 Wis. 587; *State* v. *Ada County*, 7 Ida. 261; *Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318.) Assuming that the special Erie county tax act can be held to impose a liability on

the county for a deficit in the town budget, the act is unconstitutional and void as to such provisions in that it directs the use of county moneys for other than county purposes in violation of article 8, section 10, of the New York State Constitution. (*Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318; *Horton* v. *Andrus*, 191 N. Y. 231; *People ex rel. Farley* v. *Winkler*, 203 N. Y. 445; *People ex rel. Desiderio* v. *Connolly*, 238 N. Y. 326; *People* v. *Stoll*, 242 N. Y. 453; *Town of Whitestown* v. *Title Guaranty & Surety Co.*, 72 Misc. Rep. 498; 209 N. Y. 512; *Meyer* v. *Town of Amherst*, 217 App. Div. 213; *Matter of Wendell* v. *Lavin*, 246 N. Y. 115; *Bonnell* v. *Griswold*, 80 N. Y. 128; *Matter of Manhattan Savings Institution*, 82 N. Y. 143; *Village of Kenmore* v. *County of Erie*, 252 N. Y. 437; *Augustine* v. *Town of Brant*, 249 N. Y. 198; *Horn* v. *Town of New Lots*, 83 N. Y. 100; *Deady* v. *Village of Lyons*, 33 App. Div. 139.)

*Thomas D. Lynch* and *James E. Cuff* for County of Monroe, *amicus curiæ*. The existing statutes do not authorize the imposition of the liability upon the county, for deficiencies in town tax and, particularly, assessment collections. (L. 1884, ch. 135; L. 1909, ch. 383; *People* v. *McKinny*, 52 N. Y. 374; *City of Fargo* v. *Cass County*, 35 N. D. 372; *County of Lancaster* v. *Trimble*, 34 Neb. 752; *Warner* v. *Pile*, 105 Kan. 724; *Muskogee Times Democrat* v. *Board of Commissioners*, 76 Okla. 188.) If the special Erie county tax act is construed as imposing a liability on the county for town tax and assessment deficiencies, then it violates article 8, section 10, of the New York State Constitution. (*People ex rel. Farley* v. *Winkler*, 203 N. Y. 445; *Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318; *People ex rel. Desiderio* v. *Connolly*, 238 N. Y. 326; *People* v. *Stoll*, 242 N. Y. 453; *Sun Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *Smith* v. *Smythe*, 197 N. Y. 457; *Horton* v. *Andrus*, 191 N. Y. 231; *Commissioners of Johnston County* v. *Lacy*, 174 N. C. 141; *Matter of Borup*, 182 N. Y. 222; *State ex rel. Town of Kirkwood* v. *County*,

*Court*, 142 Mo. 575; *Augustine* v. *Town of Brant*, 249 N. Y. 198; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *McAvoy* v. *Mayor*, 54 How. Pr. 245; *Ehrgott* v. *Mayor*, 96 N. Y. 264.)

*Charles L. Feldman, Corporation Counsel (Herbert A. Hickman* of counsel), for City of Buffalo, *amicus curiœ.* Any construction of the statute which puts upon the citizens of Buffalo the cost of property improvements in circumscribed local areas or districts within the town of Amherst, makes it unconscionable and unconstitutional. (N. Y. State Const. art. 8, § 10; *Sun Publishing Assn.* v. *Mayor*, 152 N. Y. 257; *Matter of City of New York [West 231st St.],* 160 App. Div. 472; 212 N. Y. 590; *Horton* v. *Andrus*, 191 N. Y. 231.) The statute contains no provision requiring the county to pay to the town the amount of the deficiency in the town's tax collections and it cannot be read into the statute. (L. 1884, ch. 135; *Furey* v. *Town of Gravesend*, 104 N. Y. 405.)

*Carleton E. Ladd* for respondent. The items of expense of the plaintiff growing out of the furnishing of sewage disposal, water supply, paving, sidewalks, lighting and fire protection and other items serve a governmental purpose. (*Augustine* v. *Town of Brant*, 249 N. Y. 198; *Horton* v. *Andrus*, 191 N. Y. 131; *People ex rel. Farley* v. *Winkler*, 203 N. Y. 445; *Springfield Fire Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46; *Markey* v. *County of Queens*, 154 N. Y. 675.) The supervisor of the town under the provisions of chapter 383 of the Laws of 1909 is entitled to receive from the town collector the entire amount levied for town expenses before the county is entitled to take. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; Tax Law, § 59.) The county became liable to the town for the payment of the town's share of the unpaid tax liens when the town collector was required to deliver to the county treasurer the unpaid tax roll and to make final accounting with the county. (*Auditor General* v. *Supervisors of Monroe County*, 36 Mich. 70.) The county

was obliged to pay or account to the town immediately after the tax sale of lands provided for by section 14 of the Erie county act. (*Wells* v. *Town of Salina,* 119 N. Y. 280; *Armstrong* v. *County of Nassau,* 101 App. Div. 116.) The uniform and long-continued practice and the practical construction placed upon the tax act by the Erie county administrative officials should have great if not controlling weight if the act is at all doubtful. (*City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543; *Armitage* v. *Board of Education,* 122 Misc. Rep. 586; 210 App. Div. 812; 240 N. Y. 548; *Wendell* v. *Lavin,* 246 N. Y. 115; *Bullock* v. *Cooley,* 225 N. Y. 566; *People ex rel. Williams* v. *Dayton,* 55 N. Y. 367; *McCarthy* v. *Woolston,* 210 App. Div. 152.) The Erie county tax act does not violate article 8, section 10, of the New York State Constitution in that it directs the use of county moneys for other than county purposes. (*O'Brien* v. *County of Westchester,* 189 App. Div. 13; 235 N. Y. 503; *People* v. *Fitch,* 148 N. Y. 71; *Board of Supervisors* v. *State,* 153 N. Y. 279; *Sun Publishing Assn.* v. *Mayor,* 152 N. Y. 257; *County* v. *Hooker,* 204 N. Y. 1.)

*John J. Bennett, Jr., Attorney-General (F. Raemond Chant* of counsel), for Comptroller of the State of New York, *amicus curiæ.* The entire machinery for the collection of real property taxes in Erie county under the special Erie county tax act is completely under the control of the county, including the levy of taxes, their collection and finally the power of sale and recovery of the taxes or purchase of the property. Controlling the machinery and having the power to sell and purchase the property imposes the obligation to pay to or reimburse other political units for the tax shortage of the unit. (Erie County Tax Act, § 4; Tax Law, § 59; *Littlejohn* v. *Littlejohn,* 195 Ala. 614; *Lorillard* v. *Town of Monroe,* 11 N. Y. 392.) There is no constitutional objection in holding the county liable to the town. (*Dorn* v. *Oyster Bay,* 84 Hun, 51; *Village of Kenmore* v. *County of Erie,*

252 N. Y. 437; *Whaley* v. *County of Monroe*, 235 App. Div. 334; *Horton* v. *Andrus*, 191 N. Y. 231; *People ex rel. Murphy* v. *Kelly*, 76 N. Y. 475; *Weismer* v. *Village of Douglas*, 64 N. Y. 91.)

*John Van Voorhis* for Town of Irondequoit, *amicus curiæ*. The act requiring the county to finance the unpaid taxes is constitutional. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437; *Matter of Pardee* v. *Rayfield*, 192 App. Div. 5; 230 N. Y. 542; *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245; *People* v. *Westchester County*, 147 N. Y. 1; *People* v. *Shepard*, 236 N. Y. 285; *Rumsey* v. *People*, 19 N. Y. 41; *People* v. *Board of Auditors*, 74 N. Y. 310; *Weet* v. *Brockport*, 16 N. Y. 162; *Markey* v. *County of Queens*, 154 N. Y. 675; *O'Brien* v. *County of Westchester*, 189 App. Div. 13; 235 N. Y. 503; *Maxmilian* v. *Mayor*, 62 N. Y. 160; *Lefrois* v. *County of Monroe*, 162 N. Y. 563.) In any case the plan of the law is that the town shall be paid out of tax collections the money provided for in the roll for town requirements in priority to payments to the county. (Tax Law, § 59; L. 1884, ch. 135; L. 1909, ch. 383; *O'Brien* v. *County of Westchester*, 189 App. Div. 13; 235 N. Y. 503; *Armitage* v. *Board of Education*, 122 Misc. Rep. 586; 210 App. Div. 812; 240 N. Y. 548; *Bullock* v. *Cooley*, 225 N. Y. 566; *People* v. *Comstock*, 78 N. Y. 356; *Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *Easton* v. *Pickersgill*, 55 N. Y. 310; *People* v. *Charbineau*, 115 N. Y. 433; *Matter of Wash. St. R. R. Co.*, 115 N. Y. 442.) The provisions of the tax laws under which the towns are paid their requirements in priority to the counties are constitutional. (*Sun Printing Assn.* v. *Mayor*, 152 N. Y. 257; *Board of Supervisors* v. *State*, 153 N. Y. 279; *Admiral Realty Co.* v. *New York*, 206 N. Y. 110; *Moore* v. *Harrison*, 224 Mich. 512.)

*Louis L. Babcock* for bondholders of Town of Amherst, *amici curiæ*.

HUBBS, J. This action brought by the town of Amherst is to recover of the county of Erie the amount of unpaid

taxes on the town roll for the fiscal year beginning January 1, 1931, returned to the County Treasurer by the town tax receiver (hereinafter referred to as collector).

In December, 1930, the plaintiff town board prepared and filed with the Board of Supervisors of the county of Erie a budget of estimated expenses totaling $253,827, which after various additions and deductions left a balance to be collected amounting to $1,170,695.74.

The chairman and clerk of the Board of Supervisors were by resolution directed to complete the roll and annex thereto the warrant required by law and when completed to deliver the same to the collector of the town. The roll as completed showed a total amount for town expenditures and town highway moneys of $343,500.96, for special district expenses $569,878.69 and for county and State expenses $257,316.09.

The roll was completed, the warrant attached and the roll and warrant were delivered to the town collector about March 16th, 1931. The warrant required the collector to collect prior to the first day of May next, the several amounts extended in the tax columns of the roll opposite the respective names of the persons and corporations named in the assessment roll and " from the moneys so collected " to pay to the supervisor and County Treasurer upon the dates and in the manner therein provided.

The collector, while the roll was in his hands, received $708,238.24, all of which he paid over to the supervisor. He failed to collect $205,141.41 of the amount required by the town budget, and so returned to the County Treasurer. The amount collected being less than the total amount raised for town and special district purposes, this action was instituted subsequent to November 1, 1931, to recover of the county $205,141.41, the difference between the total amount levied for town and special district purposes, and the amount received by the town collector and paid over to the supervisor.

The town of Amherst was organized under article 24 of the Town Law (Cons. Laws, ch. 62), and pursuant to the provisions of that article the certain special districts for which items were included in the budget and warrant were created, each for a governmental purpose. No question was raised as to the propriety of including in the budget the amounts designated for the special districts.

The legality of the adoption and approval by the Board of Supervisors of the budget or as to the issuance of the warrant to the town tax collector is not questioned.

The collector acted legally and in accordance with the resolution of the Board of Supervisors of April 14, 1931, and after turning over to the supervisor the sums collected there remained unpaid on the town budget the sum of $205,141.41.

The defendant contends that the law does not require the county to make up such deficit or permit it to do so. It is urged that the town has been extravagant and reckless; that all of the improvements and the organization of special districts for local improvement purposes was done by the town without the knowledge or consent of the county and without participation by the county in any way therein and it is contended that it would be unjust and inequitable to compel the county to make up the deficit caused by the unwise action of the town.

If the expenditures made by the town and the liabilities incurred by it are for governmental purposes and were made in accordance with the terms of the statute, the fact that they were unwisely and recklessly incurred does not create a legal question. Solution of that problem presents a political question which must be solved by the voters of the town or, if checks are needed, they must be supplied by the Legislature.

The collection of taxes in the county of Erie is governed by a special act of the Legislature (Laws 1884, ch. 135, as amd. by Laws 1909, ch. 383), which in most respects is similar to the general Tax Law (Cons. Laws, ch. 60) of

the State. Section 4 of the special Erie county act and section 59 of the general Tax Law are in substance the same except that the Erie county act (§ 4) reads that the collector shall pay to the supervisor " such sum as shall have been *raised*," while the Tax Law (§ 59) requires the collector to pay to the supervisor " all the moneys *levied*." We believe that the words " raised " and " levied " as used by the Legislature in the two acts have the same meaning and that the provision that the County Treasurer shall be paid " the residue of the moneys so collected," contained in section 4, so indicates.

Section 4 of the Erie county act directs that to each roll delivered to town collectors a warrant shall be annexed, commanding the collector to collect the sum mentioned in the last column of the roll, " and from the moneys so collected the collector shall pay, *first*, to the supervisor of the town such sum as shall have been raised for the support of highways and bridges therein, and returned highway taxes; *second*, to the supervisor of the town all moneys raised to defray other town expenses; *third*, to the treasurer of the county the residue of the moneys so collected."

Section 5 provides that town collectors shall make a return on the days mentioned in the act of all taxes collected by them and pay over the money due to the treasurer, and on a date stated in the act " shall return the tax roll and make a full, complete and final accounting under oath of all taxes by him so collected, together with a full and correct statement of all unpaid taxes contained in said roll."

For many years it has been the custom both under the Erie county act, section 4, and the general Tax Law, section 59, for collectors to first pay over to the supervisors of towns the money collected until the full amount of town budgets was paid and then to pay over to the County Treasurer the balance. Such custom should be

given consideration in construing the provisions in question. (*Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *Bullock* v. *Cooley*, 225 N. Y. 566; *Matter of Koenig* v. *Flynn*, 258 N. Y. 292.)

The collector, in paying over to the supervisor the whole amount of the money collected, it being less than the amount of the town's share, acted in accordance with the general custom and the provisions of section 4. Defendant's counterclaim based upon the contention that the collector had illegally paid over to the supervisor a portion of the money collected which should have been paid to the County Treasurer cannot be sustained.

The power of the Legislature in reference to the imposition and collection of taxes is plenary, only limited by constitutional provisions. (*Matter of Pardee* v. *Rayfield*, 192 App. Div. 5; affd., 230 N. Y. 543.)

It has provided, by various statutes, the purposes for which taxes may be collected, the method by which they may be imposed, and the machinery for their collection and distribution. The various local agencies employed in the imposition, collection and distribution of taxes are govermental agencies, engaged in performing governmental functions delegated to them by the Legislature.

Town tax collectors are not town officers but independent public officers. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392.) They act directly for the county under a warrant issued by the county which directs what they shall do and constitutes their authority for acting. After they have acted under such warrants, they are commanded to make a return to the authority which issued the warrants.

Under the special Erie county act, section 5, a collector must " return the tax roll and make a full, complete and final accounting under oath of all taxes by him so collected, together with a full and correct statement of all unpaid taxes contained in said roll."

The procedure by which a town in Erie county receives

through taxation the money with which to carry on its governmental functions is definitely provided by statute in part by the special Erie county act and in part by the town, county and tax laws. The town board prepares a budget for the ensuing year. (Town Law, §§ 145–148.) That is submitted to the county Board of Supervisors which is required after equalization of assessments and correction of error (Tax Law, §§ 50–57), to levy and cause to be raised the amount specified in the estimate. (Town Law, § 148; Tax Law, § 58.)

The tax roll is prepared by the clerk of the Board of Supervisors under direction of the Board. (County Law [Cons. Laws, ch. 11], § 50, subd. 8.)

After the Board of Supervisors shall have perfected the assessment rolls (Erie County Act, § 1), a warrant is annexed, signed by the chairman and clerk, commanding the town collector and after him the County Treasurer to collect the taxes within the time specified in the warrant and the collector is commanded to pay over the money to the supervisor of the town and to the County Treasurer. (Erie County Act, § 4.) The collector is required to return the tax roll to the County Treasurer and make a complete final accounting together with a full and correct statement of all unpaid taxes contained in said roll. (Erie County Act, § 5.)

The town, after the return by the collector of the roll to the County Treasurer, is wholly without means of collecting the uncollected taxes so returned. The statute provides no other way by which it can secure the amount of its budget. The difference between the amount which it has received from the collector and the amount which it should receive so far as that tax is concerned is absolutely lost to it unless a duty rests on the county to reimburse it, for the amount of uncollected taxes returned to the County Treasurer, which it should have received to make up the amount of its budget. This action is to recover from the county such amount.

The plaintiff town has issued bonds for a large sum in order to carry out public improvements authorized by law, and finds itself in a position where it is unable to meet accruing principal and interest on such indebtedness unless the county is required to advance the amount of uncollected taxes returned by the collector. The town had no general power to borrow money to meet such indebtedness. (*Wells* v. *Town of Salina*, 119 N. Y. 280.)

True it is that under section 141 of the Town Law, the town could borrow for temporary purposes " in anticipation of the taxes for the current fiscal year," and issue certificates of indebtedness therefor, " but not for a longer period than sixteen months." After a tax roll has been returned by a town collector, the " anticipated receipt of taxes " can only mean the advance by the county of the amount of the returned taxes as no other way is provided by which the town may recover such taxes. The other provisions of the Town Law to which attention is called, provide only for temporary relief and do not afford towns protection for situations like the one here involved.

In the case at bar, all proceedings up to and including the act of the collector in returning the tax roll to the County Treasurer were regular and according to law. The question presented is whether the county is legally bound to reimburse the town for the amount of the uncollected taxes returned by the town collector. It is conceded that the exact question has never been passed upon in this State. In the case of *Village of Kenmore* v. *County of Erie* (252 N. Y. 437) an attempt was made by the village to compel the county to reimburse it for the amount of uncollected taxes returned by the village collector to the County Treasurer. Section 126-d of the Village Law (Cons. Laws, ch. 64, amd. by Laws 1927, ch. 650) provided for such payment by the county to the village. We decided that such provision of the Village Law was unconstitutional and in violation of section 10, article 8

of the State Constitution which prohibits any county, city, town or village from incurring indebtedness except for county, city, town or village purposes.

The opinion in that case pointed out that counties are prohibited from expending money for other than county or governmental purposes; that villages are voluntary municipal corporations which may use the money collected from taxes for other than governmental purposes, and that, therefore, if the county were compelled to advance the amount for uncollected taxes to a village, it would be incurring indebtedness for other than a county or governmental purpose. The decision in that case has no application to the case at bar as the purposes for which the money sought to be obtained from the county in this case are governmental. Furthermore, they are for the purposes of a town, which like a county is a corporation formed for the purpose of carrying on local government as a political subdivision of the State, to which is delegated certain governmental duties by the State in order that the governmental duties of the State may be carried on to the best advantage of all the people of the State.

After a collector has made his return to the County Treasurer, all duties resting upon him under the tax warrant cease and no method is provided by which such unpaid taxes can be collected by the town or collector. All further proceedings for the collection of delinquent taxes are carried on by the County Treasurer.

· Section 6 provides that the County Treasurer shall receive upon all unpaid taxes, interest at the rate of twelve per cent per annum from the first day of May, together with an additional fee of five per cent thereon, and he may issue a warrant directed to town collectors or constables directing them to collect such unpaid taxes including such interest and five per cent fee and all other fees and expenses and they are empowered to collect by levy, distress and sale of personal property. Section 13

provides that where taxes remain unpaid for six months, the County Treasurer shall proceed to advertise and sell the real estate so taxed for the amount of the tax, fees, interest and expenses of such sale, such sale to be completed prior to November 30 of each year. Section 15 provides that in all cases where no bid is made on a parcel or for a sufficient sum to pay the taxes, interest, fees and expenses, or in a case where a bidder fails to pay his bid " said premises shall be deemed to have been sold to and purchased by the county of Erie. The treasurer may make certificates of sale of all land so bid in by or sold to the county," and may sell and assign the same and all moneys collected must be paid to the County Treasurer and credited to the county.

An examination of the statute discloses that the whole plan outlined in the act vests the entire matter of the collection of delinquent taxes in the county and in the Treasurer thereof. The statute provides the machinery, prescribes the practice and vests the proceeds in the county. In the event of failure to sell, the title, by operation of law, is vested in the county. Nowhere in the statute can be found any provision for turning over to the towns, the money collected by the County Treasurer or any other consideration for the vesting of the title of the property taxed in the county in the event of failure to sell, unless it is required to reimburse the towns as plaintiff contends. As the county is entitled to twelve per cent per annum on the amount of each tax and a five per cent fee in addition, it receives a consideration and has a financial interest in addition to the amount of the tax. The amount of a particular tax is determined by multiplying the assessed valuation of the property by the tax rate. The assessed valuation is supposed to be the real value of the property assessed. We know, of course, that in actual practice it is less. However, it is fair to assume that the value of the property assessed is much more than the tax assessed thereon for any one year.

The Legislature might well have had in mind when it provided that the county should collect all returned taxes and that the " premises shall be deemed to have been sold to and purchased by the county of Erie " when not sold to a purchaser at the tax sale, that the property would ultimately be sold for at least the tax assessed against it and the interest, fees and expense of collection; that in placing that burden on the county, the Legislature had expected it would ordinarily receive in the end the amount of the returned taxes, the twelve per cent per annum interest and the five per cent fee in addition.

A tax sale was held in November, 1931, and the parcels of land were sold for delinquent taxes. Thereafter the County Treasurer wrote the words " tax sold by treasurer " against each parcel so sold to the county and the county thereafter carried those parcels as " assets " upon its books. The county had done everything that it could do prior to the commencement of this action to perfect its title to the parcels of land in question under the provisions of the special statute. The title which it had was inchoate as the statute requires further proceedings to perfect such title and make it absolute.

While it is true that the statute in question does not in so many words direct that the county shall pay to the towns the amount of returned taxes, it seems that such is the policy of the State as exemplified by other statutory provisions.

Section 91 of the Tax Law, applicable to the counties outside of the Forest Preserve which have the power to sell and purchase property at tax sales, requires such counties to pay to the State the State's portion of the taxes assessed whether collected or not and the County Treasurer of each such county is required to borrow the money to make such payment if the county has not the funds on hand.

Under section 103 of the Tax Law, as the State has the power of sale and the unpaid taxes in the Forest

Preserve are turned over to it, it is required to pay to the counties the amount of such unpaid taxes.

Under section 435 of the Education Law (Cons. Laws, ch. 16), the County Treasurer is required to pay the amount of unpaid school taxes to the district treasurer or collector. By former section 126-d of the Village Law, repealed by the 1930 amending act, the County Treasurer was directed to pay all returned village taxes to the village.

While we decided in *Village of Kenmore* v. *County of Erie (supra)* that such provision of the statute was unconstitutional, nevertheless it indicates the legislative intent to continue or extend a State policy of requiring the collecting agency of a local subdivision to reimburse the local division for returned taxes.

So, in the special Erie county act, it is specifically provided that the county of Erie must pay to the State its portion of the tax assessed, whether collected by the county or not. Attention is called in respondent's brief to a large number of special acts which require the local collecting agencies to reimburse inferior local governmental divisions for all taxes returned.

In those various statutes we discern a policy on the part of the Legislature to provide that the State agency given the duty to collect taxes returned by some smaller governmental subdivision of the State shall be liable to reimburse such smaller subdivision in the amount of such returned taxes.

In the absence of an expression in the Erie county act of an intent to require the county to pay to the towns the amount of returned taxes, we are constrained to hold in view of the situation created under the facts of this case and the various provisions of the statutes that such intent is necessarily implied. We are admonished that we should not read into the statute words which it does not contain, and at the same time we are told that we should decide that the county acts as a collecting agency only, and that

it must pay over to the towns the taxes returned only when it has collected them. If so, when must the county pay over? After each tax is collected or when all are collected? Or when it has exhausted its resources in collecting? Nowhere in the act can be found any direction that the county must pay over to the town any part of the money collected. Either the county acts as a collecting agent or as a principal. With that situation existing, we are convinced that the court should give effect to the State policy as illustrated by the particular statutes referred to and hold that the county must pay over to the towns the amount of the returned taxes. It is authorized by statute to borrow money for that purpose. (County Law, § 12.) Towns are without authority to borrow money for such purpose.

When the Legislature enacted that the " premises shall be deemed to have been sold to and purchased by the county of Erie " (§ 15), it is reasonable to assume that it intended that the party purchasing (the county) should pay the party holding the claim (the town) for the unpaid taxes returned.

The State having authorized the town to incur a bonded liability for governmental purposes cannot be presumed to have intended that it should be deprived of the means of paying its obligations by having its right to collect unpaid taxes transferred to the county without any obligation on the county's part to reimburse the town.

The State having vested the title to the unpaid taxes in the county and provided machinery for their collection by which it has full control, and having conferred the right to add twelve per cent per annum and a fee of five per cent and provided that the county has authority to borrow money while the town has not, the conclusion seems irresistible that the Legislature intended that the county should reimburse the towns for the amount of the returned unpaid taxes.

The judgment should be affirmed, with costs.

O'Brien, J. (dissenting in part). The total amount of taxes levied for town purposes was $913,379.65, of which $569,878.69 was for interest and principal on bonds lawfully issued by the town and $343,500.96 for other town purposes. At the time of the trial $708,238.24 had been received by the town collector and paid over by him to the supervisor, thus leaving a deficit in the taxes collected by the town and payable to the supervisor of $205,141.41. An additional $124,984.90 had been collected by the County Treasurer from voluntary payments by taxpayers and $6,292.64 also had been realized at the tax sale conducted by the County Treasurer. Pursuant to section 4 of the Erie county special act, the town is now entitled to all this money so collected. Therefore, financial requirements are met for all ordinary town operations and a surplus remains applicable to payment of principal and interest on the bonds. The sum requisite to discharge accrued bonded indebtedness fell short, at the time of the trial, by $73,863.87. This deficit is only about eight per cent of the total amount of taxes to which the town is entitled. Must the county immediately borrow that sum and pay it to the town for the purpose of discharging indebtedness incurred by the town on paving, sewer, lighting and sidewalk bonds?

The specific question is whether sufficient grounds exist which warrant courts in reaching the conclusion, in the absence of express statute, that the Legislature intended, by section 15 of the Erie county special tax law or by any other statutory provision, that the county should, prior to actual collection of money or complete vesting of title in the county to delinquent tax lands, supply funds to replenish the town budget for uncollected taxes.

By this decision we are holding that from the facts in this case and from various statutory provisions such a legislative intent is necessarily implied. Our decision resulting from an investigation of the legislative mind and a search for a legislative purpose is far reaching. It bears intimate relationship to the administration of the

affairs of most, if not nearly all, the towns and counties in the State. Our conclusion is reached not only in the absence of express statute but also in the absence of judicial precedent, proof of custom or practical construction. We are requiring a thing to be done which no statute says must be done and which is not shown ever before to have been done. The result is out of line with the cases most nearly similar in other States wherein statutes closely resembling our own have been interpreted. (*Town of Iron River* v. *Bayfield County*, 106 Wis. 587; *State* v. *Ada County*, 7 Ida. 261; *City of Anthony* v. *Cutler*, 114 Kan. 510.) It is not supported by any decision in any other State. Practical emergency does not evoke it. Considerations such as protection of property or prevention of fiscal chaos or the suspension of the operations of town government do not demand it. A full statutory scheme is effective by which the town can function and creditors can obtain their due.

The first consideration which impresses one with the belief that the Legislature never harbored the purpose attributed to it is its failure ever to have made such a declaration. The existence of statutes which in the clearest terms do manifest an intent to impose such a liability upon counties in respect to the State, to school districts and to villages is also most impressive. The absence of any such statute applicable to towns is significant and, as I think, controlling. In plain English the Legislature has decreed that counties must make good the deficits in school districts, even though moneys have not been received by the County Treasurer (Education Law, § 435) and that every county outside the Forest Preserve must on definite dates pay to the State certain specified proportions of the State tax even though it may then be uncollected and the county must borrow. (Tax Law, § 91.) Erie county especially is commanded to do the same in respect to uncollected State taxes. (Laws 1884, ch. 135, § 11.) The purpose expressed in section 126-d of the Village Law to compel a county

to pay a village its uncollected taxes is not obscured by the fact that that purpose cannot constitutionally be effected. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437.) In placing responsibility on counties in tax matters, the Legislature has covered an extensive field. The subject-matter of this litigation is not included within that field. Towns and cities are not mentioned. The omission of appropriate language for the purpose of displaying a purpose in respect to payment by the county of deficits in a town budget certainly cannot be deemed evidence of mere oversight and the specific mention of the State, of school districts and of villages cannot be regarded as equivalent to an intent to include towns and cities, or even towns alone, in the same category with those governmental entities expressly mentioned. Discovery of any general State policy in respect to towns, except a policy of exclusion, is difficult. To me it seems impossible. Courts cannot by construction cure a *casus omissus* to supply an omitted provision. (*McKuskie* v. *Hendrickson*, 128 N. Y. 555, 558.) The law must to that extent be considered defective. (*Furey* v. *Town of Gravesend*, 104 N. Y. 405, 410.) Prior to the amendment of section 435 of the Education Law in its present form, in a proceeding instituted by trustees of a school district against a County Treasurer to compel payment to them of uncollected school taxes, this court gave utterance to these words which are truly germane to the issue whether a County Treasurer is bound, before receipt of tax moneys, to pay town charges: " We know of no rule of law or statute which imposes upon the treasurer the duty to pay claims presented *before moneys have been received by him.*" (*People ex rel. Burbank* v. *Robinson*, 76 N. Y. 422, 425.) The necessary implication of legislative intent as exhibited by all statutes now existing seems clearly to impose upon a county no obligation to pay the debts of a town until such a time, at least, as the county may have actually collected the tax.

A county's liability in tax matters is wholly statutory. If legislative command is lacking, so is liability. The Senate and Assembly are now in session and have full power to express their will. We have no right to do the things which some of us may think the Legislature ought to do or should have done. In very recent times this court, in considering the question whether a certain power had been granted to a rating organization, thus expressed our view against a policy perilously near to judicial legislation: " The legislative authority should be explicit in terms and the court should not smuggle such a grant into the law under the guise of liberal construction." (*Matter of Importers & Exporters Ins. Co.* v. *Rhoades*, 239 N. Y. 420, 426.)

The town, no less than the county, is authorized at any time after the annual estimate is adopted and before the revenues are received to borrow money in anticipation of the receipt of taxes and revenues and to issue certificates of indebtedness or revenue bonds. (Town Law, § 149.) It is also empowered to audit claims for interest and principal on the bonds issued for local improvement and in the succeeding year to issue bonds for their payment. (§§ 141, 149.) If judgment should be obtained against the town growing out of default in payment of interest or principal for the improvement bonds, amounts sufficient to pay such judgments may lawfully be inserted in the town budget for the succeeding year. (Town Law, § 148.) The town will not be prostrated by its failure at the time of the trial to collect no more than ninety-two per cent of its taxes. It is not the helpless creature that respondent would have us believe.

The County Treasurer is a secondary collecting agent. He acts in the second instance for the public in the same capacity as does the town receiver in the first instance. His collection is not complete until such a time as he receives the delinquent tax money or the county acquires full title to the delinquent lands. The argument resting upon the assertion that the county, being " deemed "

to have purchased the delinquent lands at the tax sale, owns the unpaid taxes and is, therefore, substituted for all purposes in place of the delinquent taxpayer is contrary to the decisions in all States where the question has arisen. (*Warner* v. *Hinshaw*, 105 Kan. 724, 726; *Muskogee Times-Democrat* v. *Board of Commissioners*, 76 Okla. 188, 190, 191; 37 Cyc. 1335, 1336; 26 Ruling Case Law, 417.) This argument is based not only on the provisions of section 15 of the Erie county act but also upon the fact that the County Treasurer has noted the words, " tax sold by treasurer," against all delinquent parcels and the additional fact that the county carries those parcels as an " asset." That asset, however, apparently comprises nothing more than a lien. (*Whaley* v. *County of Monroe*, 235 App. Div. 334.) The county's interest in the land upon which taxes remain unpaid is, prior to foreclosure, merely inchoate. It may never acquire title. The owner has the right of redemption within two years (§ 20) and in effect remains the actual owner subject only to the tax lien. The position of the county in respect to the tax certificate which is delivered to it by the County Treasurer by reason of its legally assumed purchase and which is subject to redemption by the owner of the land (§ 15) is not the same as that respecting the certificate issued to individuals in return for payment of real money (§ 16). The tax is in reality sold to the individual for money. The sale to the county is fictitious or constructive. The property is " deemed " to be sold to the county only as a link in the chain for collection, in order to enable the county to acquire a lien which it can either sell (§ 15) or use as the basis for a foreclosure (§ 32-a), whereby the county can eventually acquire a clear title to the land in payment for the money due on the tax. Such money when obtained belongs to the town (§ 4) and must be paid over by the County Treasurer to the supervisor. The scheme for reducing this bookkeeping asset of the county to actual ownership with an

absolute title by means of foreclosure after five years is described in article 7-A of the general Tax Law (See *Whaley* v. *County of Monroe, supra*) and in a similar mode in section 32-a of the Erie county act. The question of the rights of the county and the town might arise if on the foreclosure of the county's lien, the county should acquire title to land worth less than the amount of the tax. In respect to this question which may never arise, the Legislature is silent. Is it not for that body, rather than the courts, to speak? Matters of governmental policy affecting nearly all the towns and counties in the State are peculiarly legislative rather than judicial.

I, therefore, vote to modify this judgment against the county by awarding to the town only the moneys voluntarily paid by taxpayers to and actually received by the County Treasurer, amounting to $124,984.90, together with the moneys realized by the County Treasurer on the tax sale, amounting to $6,292.64, which aggregate the sum of $131,277.54.

POUND, Ch. J., CRANE, LEHMAN, KELLOGG and CROUCH, JJ., concur with HUBBS, J.; O'BRIEN, J. dissents in opinion.

Judgment affirmed.