John S. Dole, Plaintiff, *v.* City of New York, Defendant.

Supreme Court, Special Term, Bronx County, September 28, 1943.

*John S. Dole* and *George C. Farnham* for plaintiff.

*Robert H. Schaffer, Acting Corporation Counsel (Charles C. Weinstein, Richard C. Baltimore, Jr.,* and *Lillian Kaltman* of counsel), for defendant.

HOFSTADTER, J.   The plaintiff sues for a declaratory judgment to hold illegal the City's method of computing the per centum of protesting " adjacent " or " opposite " area on the basis of " mapped streets," as distinguished from " streets in use."

On April 30, 1942, the plaintiff and other neighboring landowners filed an application to amend the Zoning Resolution of the City of New York (eff. June 28, 1940) by changing certain land from an " E " area district to a " G " area district.   Thereafter, on June 17, 1942, the City Planning Commission unanimously adopted a resolution providing for such amendment, and on June 30, 1942, the Board of Estimate voted to approve the resolution by a vote of 13 to 1, 2 not voting. Prior to the taking of the vote, the engineers of the Board of Estimate reported that due protests against the resolution had been filed by landowners of:

Fifteen and nine-tenths per cent of the area of the land included in the proposed change;

No per cent of the area of the land immediately adjacent extending 100 feet therefrom; and

Twenty and two-tenths per cent of the area of land directly opposite thereto extending 100 feet from the street frontage of such opposite land.

Section 200 of the New York City Charter (1938) requires that if protests are filed by the owners of 20% or more of

the area of the land comprised in any one or more of the three classes enumerated, the resolution providing for the change " shall not be effective unless approved by the board of estimate by unanimous vote of the entire board." Inasmuch as the Board of Estimate did not approve the resolution by unanimous vote the resolution failed of passage.

Apparently, the plaintiff has abandoned the first three causes of action; accordingly, the controversy is narrowed to the fourth cause which relates to area 4. This area fronts on a private street and the question is whether this area was properly classified by the engineers as " adjacent " because the private street did not appear on the City Map during the zoning proceedings although it had appeared as a street on the City Map from 1895 to 1939, inclusive.

The plaintiff contends that neither section 200 nor any other section of the New York City Charter provides that the meaning of " street " be limited to " mapped streets; " but rather that the large number of existing streets in the city which do not appear on the City Map must be regarded as " streets " for zoning purposes. Specifically, the plaintiff urges that the private road in question, upon which three houses have been built by virtue of deeds granting a right of way, and which appeared on the City Map for forty-three years prior to 1939, constitutes a " street " for zoning purposes even if not now shown on the City Map. If this be so, then the land across this road is " opposite " land (pursuant to section 200 of the Charter), and the classification by the Board of Estimate's engineers was erroneous.

It is the City's contention that the word " street," for purposes of zoning, means a " mapped street ", and that its engineers employed the proper method of using " mapped streets " only as the sole basis of determining the per centum of protesting area as defined under section 200 of the New York City Charter. If the method used by the City is the correct one, then area 4 would be designated correctly as " adjacent " area, instead of " opposite " area, because that area is not shown as a street on the City Map.

The question is: Has the City the right under section 200 of the Charter to base its computation of protesting per centum on " streets " as set forth on the City Map or must it base its computation on either " public streets " or " streets in use? " (The parties agree that " public streets " are streets in which the City has title or which have been dedicated to public use.)

I conclude that the method of fixing the ·per centum of protests in consistent use by the City is both authorized and proper, and the only method that can be applied reasonably in any given set of circumstances.

The framers of the Charter have defined "street" for certain particular purposes (§ 291, subd. 4, regarding assessable improvements; § 361, regarding franchises; § 751, regarding sanitation). However, chapter 8 of the Charter (§§ 191–202), creating the new city department known as the City Planning Commission, is silent as to any definition of "street." The Planning Commission is to prepare a master plan of the city, consider at public hearings proposed zoning changes, and adopt its own resolution; the Board of Estimate is to determine finally whether the proposed change shall become effective. (*McCabe* v. *City of New York,* 281 N. Y. 349, 353.) There is no prescribed method for determining the per centum of protesting area.

It appears conclusively that the engineers of the Board of Estimate have followed the uniform and exclusive method of determining per centum of protesting area on the basis of "mapped streets" since the origin of zoning in New York City. In view of the silence of chapter 8 of the Charter, this uniform practice was continued, without a single deviation.

Considerable force must be attached to the practical construction of the statute by "public officers whose duty it is to enforce it, acquiesced in by all for a long period of time" (*Grimmer* v. *Tenement House Dept. of City of New York,* 205 N. Y. 549, 550; in accord, *Town of Amherst* v. *County of Erie,* 236 App. Div. 58, affd. 260 N. Y. 361; *Bullock* v. *Cooley,* 225 N. Y. 566; *Matter of City of New York,* 217 N. Y. 1; *City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543).

"Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." (*Matter of Rouss,* 221 N. Y. 81, 91.) Here, as the City has shown clearly, the exclusive method adopted of computing on the basis of "mapped streets" results in precision and exactness. The lines of "mapped streets" are even, fixed, and determined. On the other hand, the method suggested by the plaintiff of computing on the basis of "streets in use" would result inevitably in confusion and uncertainty, and obstruct the operation of zoning. The impracticality of plaintiff's suggested method is obvious: there could be no direct and simple method of calculating protests; frequently the lines of a "street in use"

are not readily determined without first obtaining an adjudication from the courts as to title; often, streets in use have no specific location and may fall outside the lines of mapped streets. With reference to "public streets," there would exist situations in which a given area would contain "public streets," which are always shown in the City Map, and "mapped streets," which often are not "public streets," but merely "proposed streets;" numerous clashes would result concerning which type of street to use as a basis for figuring protests.

Judgment is directed for the defendant. Settle judgment.