VILLAGE OF KENMORE et al., Appellants, *v.* COUNTY OF
ERIE et al., Respondents.

(Argued December 3, 1929; decided January 7, 1930.)

*Simon Fleischmann, Martin Clark* and *Frank C. Moore*
for appellants. The provisions of the Village Law relating
to the collection of unpaid village taxes merely provide a
means and method for the effective collection thereof, and
the Legislature had power to enact the same, and they are
not of a jurisdictional nature. (*Michigan Cent. R. R. Co.*
v. *Powers,* 201 U. S. 245; *Lorillard* v. *Town,* 11 N. Y. 392;
*County of Albany* v. *Hooker,* 204 N. Y. 1; *Town of Guilford*
v. *Supervisors,* 13 N. Y. 143; *People* v. *Mayor,* 4 N. Y. 419;
*People* v. *Board,* 126 App. Div. 414.) The provisions of
the Village Law relating to the imposing, spreading,
levying and collection of village taxes were within the
comprehensive power of the Legislature as to taxation
and did not trench on constitutional restrictions or limita-
tions. (*Pardee* v. *Rayfield,* 192 App. Div. 5; 230 N. Y.
543; *People ex rel. Griffin* v. *Mayor,* 4 N. Y. 419; *Genet* v.
*City of Brooklyn,* 99 N. Y. 296; *Gautier* v. *Ditmar,* 204
N. Y. 20; *Wilson* v. *Mayor,* 1 Abb. Pr. 4; *People* v. *Waldof,*
168 App. Div. 473; *Adriaansen* v. *Board of Education,* 222
App. Div. 320; 248 N. Y. 542; *Matter of Van Antwerp,*
56 N. Y. 261; *Matter of Wendel,* 223 N. Y. 433; *People ex
rel. Clark* v. *Gilchrist,* 243 N. Y. 173; *Matter of Bryant,*
152 N. Y. 412; *Matter of Keeney,* 194 N. Y. 281; *Michigan
Cent. R. R. Co.* v. *Powers,* 201 U. S. 245.) The tax
provisions of the Village Law are not violative of section
10 of article VIII of the State Constitution. (*Board of
Supervisors* v. *State,* 153 N. Y. 279; *Sun Publishing Assn.*
v. *Mayor,* 152 N. Y. 257; 1 McQuillin on Municipal
Corp. § 112; *Madden* v. *Lancaster,* 65 Fed. Rep. 188;
*Comrs.* v. *Mighels,* 7 Ohio St. 109; *Askew* v. *Hale Co.,*
54 Ala. 639; *Kahn* v. *Sutro,* 114 Cal. 317; *Moore* v.
*Harrison,* 224 Mich. 518; *County of Albany* v. *Hooker,* 204
N. Y. 1; *People* v. *Fitch,* 148 N. Y. 71; *Ruland* v. *Tuthill,*
187 App. Div. 20.)

*Frank C. Laughlin, M. Edwin Merwin, Joseph W. Kirkpatrick* and *Stewart W. Bowers* for respondents. Section 126-d of the Village Law (Laws of 1928, chap. 39) is unconstitutional in that it violates the provisions of section 10 of article VIII of the Constitution of the State of New York. (*Fifth Avenue Coach Co. v. City of New York,* 194 N. Y. 19; *City of Rochester v. West,* 164 N. Y. 510; *Gilman v. Tucker,* 128 N. Y. 190; *Stuart v. Palmer,* 74 N. Y. 183; *Matter of Fleischmann v. Graves,* 235 N. Y. 84; *County of Albany v. Hooker,* 204 N. Y. 1; *Village of Haverstraw v. Eckerson,* 194 N. Y. 54; *Williams v. Port Chester,* 97 App. Div. 84; 183 N. Y. 550; *Berry v. Village of Port Jervis,* 64 App. Div. 268; *Horton v. Andrus,* 191 N. Y. 231; *Smith v. Smythe,* 197 N. Y. 457; *Matter of Borup,* 182 N. Y. 222; *Sun Publishing Assn. v. Mayor,* 152 N. Y. 257; *Matter of Mayor of N. Y.,* 99 N. Y. 569; *Bush v. Board of Supervisors,* 159 N. Y. 212; *Weismer v. Village of Douglas,* 64 N. Y. 91.) The fact that the Village Law (§§ 126-d and 126-e) contains provisions substantially the same in terms as those contained in the Education Law (§§ 435 and 436) does not furnish any legal ground for upholding the constitutionality of the former statute which in its application directly violates the express provisions of the Constitution while the latter does not appear to violate any constitutional provisions. (*People ex rel. Wogan v. Rafferty,* 208 N. Y. 451; *Matter of Wendell v. Lavin,* 246 N. Y. 115; *Fairbank v. United States,* 181 U. S. 283; *United States v. Graham,* 110 U. S. 219; *United States v. Tanner,* 147 U. S. 661; *Board of Education v. Van Zandt,* 119 Misc. Rep. 124; 204 App. Div. 856; 234 N. Y. 644; 1 Cooley on Taxation [4th ed.], 269.)

*H. L. Wallace* for County of Oswego, *amicus curiæ.* Section 126-d of the Village Law violates section 10 of article VIII of the Constitution of the State of New York. (*Matter of Town of Flatbush,* 60 N. Y. 398.)

440

*E. W. Hofstatter* for County of Rockland, *amicus curiæ.*
Section 126-d of the Village Law, violates section 10 of
article VIII of the Constitution of the State of New
York. (*Matter of Town of Flatbush,* 60 N. Y. 398.)

LEHMAN, J. The Legislature has devised a plan by
which the function of collecting unpaid village taxes has
been shifted from the village officers to county officers.
(Chapter 650 of the Laws of 1927.) The method is
simple. The village board of trustees is required each
year to transmit to the treasurer of the county a verified
and certified account of the village taxes remaining due
and unpaid and the County Treasurer is required to pay
to the treasurer of the village the amount of the taxes
so returned unpaid. (Village Law, §§ 126-b, 126-d; Cons.
Laws, ch. 64.) Then the board of supervisors must levy
the taxes upon the lands upon which " the same were
imposed * * * and when collected the same shall be
returned to the county treasurer to reimburse the amount
so advanced with the expenses of collection." (§ 126-e.)
Doubtless the system of levying and collecting taxes
by officers of villages works imperfectly. Machinery
devised for larger taxing districts than villages might
function more efficiently and economically. Certainty
that the village treasurer will receive the full amount of all
village taxes levied is desirable for the village. To
achieve that result, the Legislature has commanded that
the county shall obtain either through taxes or loans
moneys sufficient to pay to the villages, within its bound-
aries, the amount of the village taxes before the taxes
are fully collected, and must assume the burden of collect-
ing the unpaid taxes and such risk as there may be that
some of the taxes cannot be collected. The county of
Erie, claiming that such commands exceed the power of
the Legislature, has refused to accept from the village of
Kenmore the account of unpaid taxes levied in the year

1928 or to pay to the village the amount of such unpaid taxes.

We are not concerned with the policy or expediency of the legislation. Subject only to the restrictions contained in the State and Federal Constitutions, the power of the Legislature is plenary. Obedience must be rendered to statutes which do not offend against such restrictions, even though they may seem to us impolitic; statutes which are beyond the power of the Legislature are invalid, though they may be politically wise. Arguments based on public policy or expediency are irrelevant, except in so far as they may guide us towards a reasonable construction of the constitutional limitations.

"A county is a municipal corporation, comprising the inhabitants within its boundaries, and formed for the purpose of exercising the powers and discharging the duties of local government, and the administration of public affairs conferred upon it by law." (County Law, § 3; Cons. Laws, ch. 11.) It is a corporation formed for the specific purpose of local government and administration. It is in effect a subdivision of governed territory established for the more convenient administration of government and having such powers as are necessary to be exercised for the welfare, advantage and protection of the public within their boundaries. " While in the People resided the sovereign right to declare the general mode of their government, it was the appropriate duty of their legislative body to so arrange the territory of the state into civil divisions and to so apportion among them governmental duties, as would best conduce to the advantage of its citizens." (*Markey* v. *County of Queens*, 154 N. Y. 675.)

In the same case the court pointed out that a county is a political subdivision of the State. A village is a municipal corporation invested with particular franchises. "A distinction exists between such a corporation, which is created by charter and is granted the power to own and

to manage private property and is invested with particular franchises, and a municipal corporation, which is created for the purposes of state government and to exercise as one of its civil divisions, certain of its political powers." A village is not, like a county, an involuntary corporation. Owners of property assessed for taxation may vote upon a proposition for the incorporation of territory as a village. (Village Law, § 9.) A village may take and hold real and personal estate absolutely or in trust for any public use, and its corporate powers extend beyond the field of local government and the administration of local affairs.

Doubtless the Legislature, in the exercise of its power and the performance of its duty to " arrange the territory of the state into civil divisions and to so apportion among them governmental duties," may use the county and its officers for the performance of such governmental functions or duties as it sees fit. School districts are, like counties, governmental subdivisions of the State, though their governmental function is confined to education. The State uses the machinery of county government to supplement the machinery of the school districts where the latter proves inefficient in the collection of school taxes. (Education Law, §§ 434–439; Cons. Laws, ch. 16.) These provisions of the law are perhaps in many respects analogous to the provisions of the Village Law now under consideration. Not in all. In the one case a burden is placed upon the county and all its inhabitants to assist a subordinate governmental subdivision in the exercise of a power and the discharge of a duty of local government. Moneys paid to a school district may be used for no other purpose, and since that purpose is governmental, it is a county purpose. (*Horton* v. *Andrus*, 191 N. Y. 231.) A city or village holds the proceeds of taxation as its corporate property. It may use the moneys received as it pleases for purposes of local government or for any other purpose within its corporate powers. In placing upon the county

the burden of providing moneys to be used by the village for village purposes, the government of the State is not applying moneys of a governmental subdivision to governmental purposes performed through the agency of a subordinate subdivision. To the extent that the village has corporate powers which are not governmental; to the extent that the village is incorporated for purposes outside the field of local government and administration for which counties are formed, it is more than a governmental subdivision. (*Matter of Northern Bank of New York*, 85 Misc. Rep. 594; affd., on opinion below, 168 App. Div. 974; affd., 212 N. Y. 608.) Furnishing money which a village may use for purposes not governmental nor of State concern is not a county purpose. (*Horton* v. *Andrus, supra; State ex ·rel. Town of Kirkwood* v. *County Court*, 142 Mo. 575, at p. 584; *Commissioners of Johnston County* v. *Lacy*, 174 N. C. 141.)

These considerations narrow the scope of the question we must decide. We may in this case cast aside all questions of the power of the Legislature to place upon a whole county a burden of local government within a subdivision of the county. The question before us is whether the legislative power is restricted when it casts upon a county a burden for purposes other than local government.

Article VIII, section 10, of the Constitution provides that " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes. This section shall not prevent such county, city, town or village from making such provision for the aid or support of its poor as may be authorized by law." These provisions were inserted in the Constitution in

1874. Other provisions of section 10 limiting the amount of the indebtedness of municipal corporations have been added since. The earlier provisions have been preserved in their original form. In its present form the section prohibits any indebtedness except for county, city, town and village purposes, and limits the amount of indebtedness within that field. We are concerned with the prohibition not the limitation. The county of Erie cannot obey the legislative command without incurring an indebtedness for moneys sufficient to pay to the village of Kenmore the amount of the unpaid village taxes. The Legislature was restrained by the Constitution of the State from giving such command.

We need not now decide whether the Legislature could have compelled the counties of the State to give from their own funds to villages the amount of unpaid village taxes, nor whether a county could be compelled to raise funds for such a purpose by taxation. We base our decision upon the express restriction of the Constitution, not upon any argument that other restrictions are implied. While section 126-d of the Village Law provides that the amount of taxes returned unpaid by a village shall be paid " out of any moneys in the county treasury raised for contingent expenses or for the purpose of paying the amount of the taxes so returned unpaid," it also provides that such amount must be paid in any event even " if there are no moneys in the treasury applicable to such purpose." Obviously if there are no moneys in the treasury applicable to such purpose, the county can make the payment only by incurring an indebtedness in the form of a loan, and there can be no doubt that the Legislature intended as a necessary part of the procedure for carrying out the provisions of the statute that such indebtedness should be incurred.

It is argued that the constitutional restriction that a county shall not be " allowed to incur any indebtedness

except for county, city, town or village purposes " should not be construed to include an indebtedness which the Legislature imposes upon it. We have held, or at least assumed, the contrary in *Horton* v. *Andrus* (*supra*). The object of the constitutional provision is to prevent a municipal corporation from being subjected to indebtedness for other purposes than those for. which it was created. In determining the effect of an analogous provision in a State Constitution upon indebtedness incurred under legislative command, the Supreme Court of the United States has said: " The legislature could no more impose it than the county could voluntarily assume it, as against the disability of a constitutional prohibition." (*Lake County* v. *Rollins*, 130 U. S. 662.) (See, also, *Doon Township* v. *Cummins*, 142 U. S. 366; *Barnard & Co.* v. *Knox County*, 105 Mo. 382; *Commissioners of Johnston County* v. *Lacy*, *supra*.)

It is true that in some other jurisdictions, courts construing provisions of State Constitutions *limiting* the amount of the indebtedness of municipal corporations, have construed the language of the Constitution as intended to include only indebtedness voluntarily assumed. (*Lewis* v. *Widber*, 99 Cal. 412; *Rauch* v. *Chapman*, 16 Wash. 568; *Gladwin* v. *Ames*, 30 Wash. 608; *McCarthy* v. *City of Kelso*, 129 Wash. 121; *Thomas* v. *City of Burlington*, 69 Iowa, 140, at p. 143; *City of Springfield* v. *Edwards*, 84 Ill. 626, at p. 632; *O'Bryan* v. *City of Owensboro*, 113 Ky. 680, at p. 692; *Hume* v. *Wyand*, 68 Okla. 261, at p. 262.) Sometimes the courts have based decision upon peculiar language of the constitutional provisions; more often upon an assumed necessity. A constitutional limitation upon the indebtedness of a municipal corporation should not receive a construction, it is said, which would at times render it impossible for a municipal corporation to carry out its governmental functions. In a limited field that argument may be sound. It may apply where the Constitution *limits* the amount of indebtedness which

can be incurred for any purposes; it can have no application where the Constitution does not limit but entirely *prohibits* indebtedness incurred for other than county purposes.

Public policy may dictate that a limitation upon the indebtedness which may be incurred by a municipal corporation for its own purposes should not prevent the corporation from borrowing money to carry out the purposes for which it was formed, until such time as it might be able to raise the money through taxation. Therefore, when a limitation upon the indebtedness of a municipal corporation was inserted in article VIII, section 10, of the Constitution, provision was made that "this section shall not be construed to prevent the issuing of certificates of indebtedness or revenue bonds issued in anticipation of the collection of taxes for amounts actually contained, or to be contained in the taxes for the year," etc. The intent of the provision is clear, its language is unambiguous. It applies only to the limitation of indebtedness otherwise permitted; without perversion of its letter and spirit it cannot be made to apply as an exception to the earlier prohibition against a county incurring any indebtedness except for county purposes.

For these reasons, and without passing upon other objections, the judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.