Frank P. De Luca, J.
This is a motion for summary judgment instituted by plaintiff against the Treasurer of Suffolk County and Suffolk County itself, in a taxpayer’s action brought pursuant to section 51 of the General Municipal Law.
The obvious purpose of this lawsuit is to restrain the county from implementation of a change in the procedure of processing *5 the collection of unpaid taxes for real property in Suffolk County, and to restore the previous practice of selling tax certificates at public auction. Since 1929, when the Suffolk County Tax Act (L. 1929, ch. 152) was enacted by the State Legislature (an incomplete act was passed in 1920 [L. 1920, ch. 311]), a parcel of land for which property taxes were not paid was sold by the Treasurer to the person bidding the lowest rate of interest from 6% to zero or “ flat.” If the delinquent taxpayer did not redeem by paying the tax arrears plus the interest, if any, to the successful bidder, within three years, the latter received a deed to the property from the Treasurer. In effect, the system encouraged the practice of speculating in real estate at little or no risk to the bidder, since, at worst, he would have his investment returned without interest, or at best, he would become the owner of real estate worth many times the amount of unpaid taxes paid at the tax sale. But the county received its unpaid taxes forthwith from the purchaser of the tax certificate, rather than having to borrow, or wait, theoretically, to the eve of redemption (3 years) for the revenues needed to run the county government.
In 1971, the system was radically altered by adoption of two resolutions of the County Legislature authorizing the County Treasurer “to reject all bids for parcels of real property at the annual tax sale,” and to bid in and buy these parcels at 3% interest for six months. (Resolutions No. 829-1971 and No. 1078-1971.) Pursuant to sections 42, 43 and 45 of the Suffolk County Tax Act (SCTA), the Treasurer advertised that he had received the tax rolls from the town tax receivers (§ 42), announced the tax sale for November 10, 1971 (§ 43), and sold the property (§ 45) to Suffolk County (Resolution No. 829-1971) at an interest rate of 3% for six months. (Resolution No. 1078-1971.) The sales were financed by earmarking approximately $3,000,000 in tax funds for this purpose from the county budget, in response to the urging of the County Executive who felt that the county, rather than private citizens, should be in a position to acquire lands “ at a fraction of their real value.”
Plaintiff’s position, in essence, is that:
1. ) A county has no power to make purchases at a tax sale except for a county purpose. Insofar as section 45 of SCTA authorizes: a) the rejection of any or all bids, and b) purchase by the county, it is unconstitutional.
2. ) The sales made on November 10, 1971 should be canceled and the $3,000,000 refunded to the county by the County Treasurer.
*6 3. The County Treasurer had no power to advertise the sale as he did, nor was the sale legally conducted. The advertising expense of $125,000 paid to the county-designated newspapers is illegal, and if already paid, should be recovered by the Treasurer from these newspapers.
At the oral argument of this motion, an application was made by Elwood D. Hooper, Esq., to intervene and to participate in the argument in behalf of the contentions advanced by plaintiff. Said application was granted and the court has considered the argument and memorandum of law submitted by Mr. Hooper.
I. The Constitutionality of Section 45 of the Suffolk County Tax Act
Section 43 mandates what is to be included in the Treasurer’s notice of sale; — the list of all parcels liable to be sold for unpaid taxes; dates of sale; time and place and that the owners of the lands will be required to pay the arrears and penalties to the County Treasurer, otherwise the land will be sold. After the 1971 amendment of section 45 of the Suffolk County Tax Act by the State Legislature (L. 1971, ch. 915), which permitted the county legislature to fix the rate of interest at tax sales, a pertinent portion of the statute reads as follows: “In any case, however, and as to any parcel, the county may reject any and all bids and bid in and purchase the same for the county at a rate of interest as shall be established by resolution of the county legislature, but not to exceed the maximum rate of interest as herein provided, in which event the bid of the county shall be preferred over all other bids. The county shall likewise be deemed the purchaser at the rate of interest as herein provided for, of all parcels which are not sold at such sale. ’ ’
Plaintiff contends that section 45 runs afoul of sections 1 and 2 of article VIII of the New York State Constitution which respectively prohibit a county from giving or loaning money or credit to, or in aid of, an individual, corporation or association and from contracting any indebtedness except for ‘ ‘ county purposes.” In his complaint, plaintiff alleges “ that the making of sound investments is not a County purpose, nor is the purchase at a tax sale of real property for which the County has no public use ’ ’; furthermore, section 1 of article VIII ‘ ‘ forbids the voluntary loan of any money in aid of any individual, which is exactly what is done by the tax sale purchaser when he advances the money to pay the delinquents’ taxes * # * .Such aid in the payment of private parties’ tax obligations is not a county or public purpose, but a mere gift.”
*7 The court does not share the plaintiff’s views and finds section 45 to be constitutional.
As pointed out by defendants, the plaintiff is unable to characterize what constitutes a “ county purpose,” but he is nonetheless certain that the purchase of unpaid tax parcels by the county is not within that classification. It would appear that such a narrow and restrictive view of governmental power was rejected some 40 years ago by the advent of the social security system, and a host of Federal New Deal legislation, with the States following suit. Thus, the State of New York and its cities, towns, villages and counties use tax moneys to build and operate hospitals, clinics, transit systems, water supply and other utilities, all in competition with private enterprise. The court takes judicial notice that the Village of Freeport operates its own electric power plant while the Southwest Sewer District has recently begun operations in Suffolk County — are these not today’s example of valid local government purposes?
Necessarily then, a constitution is a living thing requiring an elastic interpretation in the light of societal changes never dreamed of by our 18th century founding fathers. While plaintiff cites Village of Kenmore v. County of Erie (252 N. Y. 437) for the general statement that ‘ ‘ a county purpose is confined to governmental powers and the administration of public affairs,” the courts have upheld a variety of governmental purposes, — i.e. county financing of an area drainage system (Horton v. Andrus, 191 N. Y. 231 — cited approvingly in Kenmore) condemnation of additional property for development of the World Trade Center (Courtesy Sandwich Shop v. Port of New York Auth., 12 N Y 2d 379).
As to the making of a “ gift ” to a delinquent taxpayer by the county — even if one accepts this characterization by plaintiff— such a result is an incidental by-product of the main public purpose and does not render the entire statutory scheme unconstitutional. Thus, incidental profit making because of condemnation in developing the World Trade Center did not violate the State Constitution. (Courtesy Sandwich Shop v. Port of New York Auth., supra.) As succinctly stated in defendant’s brief, the logical converse argument is that in private enterprise, an incidental benefit to the public “ does not make the private operation in any sense a proper public purpose.”
Finally, the court notes that plaintiff makes no objection concerning the risk-taking aspects of the new system and concedes that the county may be making “ sound investment.” Indeed, plaintiff will find himself displaced from the lucrative practice *8 of purchasing tax certificates and perhaps that is the purpose of this lawsuit. He cannot deny that as pointed out above, the successful bidder cannot lose — his investment will be returned with or without interest or he will purchase real property at a considerable bargain. The difference is that now the residents of the county will share in the benefits, rather than the individual tax sale buyer.
H. The Advertisement and Conduct oe the Tax Sale
The court has examined the official announcement of the 1971 • county tax sale and, as conceded by defendants, the notice does refer to a sale of ‘ ‘ tax liens. ’ ’ While the intervenor rightly points out that sections 45 and 46 of SOTA speak only of the sale of “ property ” rather than “ tax liens,” a reading of the entire notice would offer a reasonably accurate description of the sale procedure. Thus, even the unsophisticated prospective bidder preparing to attend the sale, would know “ The County Treasurer will issue certificates describing the lands purchased ’ ’ “ the interest at which the property was bid,” “ all parcels will be sold to Suffolk County ” (emphasis added). If as plaintiff contends, the purpose of advertising the sale is to attract a greater number of bidders so as to drive the interest down for the benefit of the redeeming owner, such a bidder could not be misled as to the procedures or purposes of the sale. Conversely, if the purpose of the notice of sale is to warn delinquent owners that their property was in tax arrears and that they would have three years to redeem, there would exist little or no chance that the owner would be deceived or confused by the notice. The strict and unyielding construction of the tax act urged by the intervenor, while perhaps applicable to tax bill language where an owner might fail to be apprised of any prior arrears, should not serve to distort the purposes and methods of the sale out of all reasonable proportion.
Plaintiff and intervenor argue that the new procedure does away with the public auction required by section 43 of SOTA; that a bulk sale violates the requirement of separate bids for each parcel and that the Treasurer has no right to reject all bids and thus eliminate the necessity of the sale. It would seem to the court that these technical arguments have been answered by the finding herein, in favor of the constitutionality of section 45 which plainly authorizes the county, and by delegation to the Treasurer as authorized by resolution, to reject any and all bids and to bid in its own behalf.
Finally, plaintiff and the iniervenor point to section 1008 of the Eeal Property Tax Law which empowers a county to reject *9 all bids at a tax sale only in a case where the county has any interest. In addition, the intervenor contends that, section 1008 prohibits a county from purchasing anything except ‘ ‘ lands ’ ’ at a tax sale — i.e., it cannot buy a “ tax lien.” And since section 32 of SCTA makes the State Tax Law applicable to Suffolk County except where the two statutes are in conflict, section 1008 is paramount. To this effect, the authority of Matter of Countywide Realty Co. v. Bruen (18 A D 2d 259, affd. 14 N Y 2d 604) is cited. In that case, the Appellate Division held that the Putnam County Board of Supervisors lacked the power to reject bids of persons at public sales of tax delinquent lands. However, the County wide case cannot be considered as authority here, because Suffolk County has a special tax act while Putnam County did not. Thus, the State statute (Beal Property Tax Law, § 1008) would be applicable there, which is not the case in Suffolk County. Section 32 of SCTA makes the SCTA applicable where it is not consistent with the Real Property Tax Law, and the accepted rules of statutory construction make the special or particular statute applicable rather than the general statute. In this case, section 1008 of the Real Property Tax Law is inconsistent with section 45 of SCTA and hence, the special statute or section 45 prevails. Section 1606 of the Real Property Tax Law specifically states that, “ This chapter shall not be deemed to repeal or otherwise affect the provisions of any special or local law or ordinance- or of any county * * * the same shall continue in full force and effect ”. (See, also, this court’s decision in Asphalt Assoc. v. Rand, Suffolk County No. 162650, citing Ierna v. Muranzano, 28 Misc 2d 231 and Matter of Gould Realty Co. v. Reutershan, 284 N. Y. 540.) To lay the matter to redt, the State Legislature by its 1971 amendment of section 45 (Which was subsequent to the Countywide deei- . sion) clearly reaffirmed the power of the county terrejeet “ any and all bids.”
Accordingly, the court finds that the notice, advertisement and mechanics of the sale , were not in violation of law, albeit one could reasonably question the expenditure of $125,000 for advertising a tdx sale in which all bids would be rejected. That, however, is a policy matter for the County Legislature to decide and perhaps attributable to temporary adherence to past practice and custom. ,
Since a motion for summary judgment searches the record (CPLR 3212, subd. [b]) and since all parties have agreed -that no factual issues are in dispute, summary judgment is granted in favor of defendants and the complaint is dismissed.