COUNTY OF NASSAU, Appellant and Respondent, *v.* CITY OF LONG BEACH et al., Respondents and Appellants.

(Argued December 1, 1936; decided December 31, 1936.)

261

*James L. Dowsey, County Attorney (Kenneth M. Spence, Paul Van Anda, John J. Knob* and *Howard A. Fluckiger* of counsel) for plaintiff, appellant and respondent.

*David B. Tolins, Corporation Counsel (John J. Curtin* of counsel), for defendants, respondents and appellants.

Hubbs, J.   In the county of Nassau prior to 1933 there existed two methods for collecting State and county taxes. In the town the tax was collected by the town receiver, who corresponds to a town tax collector.   The Board of Supervisors of the county issued its warrants directly to the town receiver.   In the two cities of the county the Board of Supervisors certified to the cities the amount of the State and county taxes to be assessed and the collection was made by the cities acting through the City Treasurer. Under the city method the cities became liable to the county for the full amount of the tax levied and certified against each by the Board of Supervisors.   That was true even though there was a failure to collect the full amount of the tax certified.   In any event, the cities were legally bound to pay to the county the amount of the tax certified whether actually collected or not.   (*Town of Amherst* v. *County of Erie*, 260 N. Y. 361; *Matter of County of Oswego* v. *Foster*, 262 N. Y. 439.)

Prior to April 29, 1933, the city of Long Beach had collected during different years taxes to the amount of $433,760.68, which it failed to pay over to the county. Of the amount certified for collection during that period,

it had failed to collect a large amount, so that of the amount due from the city to the county for collected taxes which it had not paid over to the county, and for uncollected taxes which had been certified to the city by the Board for collection, the city was indebted to the county in the sum of $920,464.19.

This action in equity by the county against the city is to compel the payment of that amount. The trial court found in favor of the county for $433,760.68, the amount of taxes collected by the city and not paid over to the county, but refused to find in favor of the county for the amount of the taxes certified to the city for collection before April 29, 1933, but which it had failed to collect.

Its refusal to find in favor of the county on its claim for the uncollected taxes was based on the provisions of chapter 594 of the Laws of 1933. The contention of the county is that it is entitled to judgment against the city for not only the sum of $433,760.68, found in its favor, but also for the amount of taxes which the city failed to collect prior to April 29, 1933, and also for the amount of taxes which the city has failed to collect since April 29, 1933. The city concedes its liability for $433,760.68, the amount found against it by the trial court, being the amount of taxes collected prior to April 29, 1933, but not paid over to the county. It contends that for the amount of uncollected taxes prior to that date and since that time it is not liable to the county. The basis of the city's contention is the provisions of chapter 594 of the Laws of 1933 which it claims exonerates it from liability for such uncollected taxes.

Two important questions are here involved: *First*, does chapter 594 of the Laws of 1933 (effective April 29th) by its terms change the liability of the city from the absolute liability which existed before its passage and relieve it from all liability to the county for uncollected taxes certified by the county for collection? *Second*, if the statute by its terms relieves the city from liability to the

county for the amount of uncollected taxes certified, is it constitutional as to uncollected taxes certified to the city by the county prior to 1933?

Prior to the enactment of chapter 594 of the Laws of 1933, the city charter (Laws of 1922, ch. 635, as amd.) required the Board of Supervisors to certify to the city the gross amount of State and county taxes to be collected by the city. The city added that amount to the amount to be collected for city taxes and apportioned and extended the whole amount against individual properties. (Laws of 1922, ch. 635, §§ 106, 107.)

It issued its tax warrant for the collection of the tax to the City Treasurer. No segregation of State and county taxes from city taxes was required or made. It collected the tax through its own officer under its own warrant and had the power to enforce collection by action or sale of the property taxed. (Id. §§ 107, 111.) The city was the collecting authority for the collection of State and county taxes and it became the debtor of the county for the amount of the taxes certified to it for collection even though it failed to collect them from the individual's taxes.

Prior to 1933 the city failed to pay over to the county sums which it had collected for State and county taxes. On April 29th of that year chapter 594 became effective. It amended the city charter. By section 106 it is provided that the City Clerk shall apportion on the assessment roll in separate columns from the city tax, the State and county taxes certified to the city by the Board of Supervisors.

Section 108 directs that all State and county taxes shall be paid to the City Treasurer as agent of the county, and that the lien on all such taxes shall belong to the county. All payments of State and county taxes shall be kept in a separate fund and shall be paid over within fifteen days after the end of each calendar month. Section 114-e provides that when property is sold for non-payment of the tax and is bid in by the city, the City Treasurer

shall execute to the county a certificate of sale for an amount equal to the State and county taxes with interest. So much of the proceeds of any sale of property as represents the State and county tax with interest thereon shall be paid over to the County Treasurer within thirty days from the last day of sale. (§ 115-b.)

The act provides that on the passage of the act the City Treasurer shall execute and deliver to the County Treasurer an assignment of so much of the lien acquired by the city at any tax sale theretofore had on property not redeemed as represents the amount of the State and county taxes with interest thereon. It directs that upon collection other than by sale of any tax theretofore levied, so much as represents State and county taxes shall be paid to the County Treasurer as if a separate levy had been made for State and county taxes. Upon the sale of any property for a tax theretofore levied, so much of the amount as represents State and county taxes shall be for the benefit of the county and shall be paid over to it, or if not sold the city shall deliver a tax sale certificate for such an amount as the county would be entitled to if a separate levy had been made. Then followed this provision: " § 3 * * * (subd.) 4. Upon the passage of this act the liability of the city to the county shall be discharged to the extent of the amount of uncollected taxes heretofore levied which represents state and county taxes and to the extent of amount of the lien on property heretofore sold which is herein provided to be assigned to the county, and in lieu of the liability so discharged the city and its officials shall perform the acts required by this section."

The act of 1933 also repealed certain provisions of the city charter which tended to make the city liable to the county as a debtor for all taxes certified to it for collection. Finally, by section 3, subdivision 4, it expressly attempted to relieve the city from liability for all uncollected taxes certified to it for collection prior to the effective date of the act. Thereafter the city acted as collecting agent for the county and ceased to be liable to the

county for uncollected taxes certified to it for collection. We have nothing to do with the question as to the wisdom of the change made by the Legislature. In the absence of constitutional restrictions, it possessed plenary power to make any change which it deemed advisable in the method of collecting the taxes in question. (*Matter of Pardee* v. *Rayfield*, 192 App. Div. 5; affd., 230 N. Y. 543; *Town of Amherst* v. *County of Erie, supra.*)

*Matter of County of Oswego* v. *Foster* and *Town of Amherst* v. *County of Erie* (*supra*), relied upon by the county, do not hold to the contrary. In those cases this court, in construing the statutes involved, decided that the county and city were liable as debtors. In the case at bar we construe the statutes as relieving the city from that liability.

The Legislature cannot, however, constitutionally deprive the county of a vested property right, as it attempted to do by the terms of section 3, subdivision 4.

Section 10, article VIII of the State Constitution reads: " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

At the time the act of 1933 became effective, the city was indebted to the county for uncollected taxes for the collection of which the county had a valid cause of action against the city. The cause of action and indebtedness constituted property. (*Town of Walton* v. *Adair*, 111 App. Div. 817; affd., 191 N. Y. 509.)

That asset of the county could not legally be devoted to private purposes under the provision of the Constitution either voluntarily by the act of the county or by compulsion under an act of the Legislature. The city is engaged in private purposes as well as in public functions and the Constitution in unmistakable terms forbids the

use of its property or credit for such private purpose. (*Village of Kenmore* v. *County of Erie*, 252 N. Y. 437.)

If, instead of having a valid cause of action against the city, the county had held the city's written obligation to pay the amount, it would be perfectly clear that the Legislature could not legally require the county to cancel and surrender the written obligation to the city. We see no difference in the effect which the act of the Legislature attempted to accomplish.

In so far as the statute attempts to discharge the city from liability to the county for uncollected taxes certified to it for collection by the Board of Supervisors prior to April 29, 1933, the effective date of the statute, it is unconstitutional and void and the city remains liable therefor.

We have given careful consideration to the other questions presented and find no error therein requiring a reversal or modification of the judgment.

This action being in equity against a municipal corporation we are of the opinion that the Special Term had discretion as to the manner in which its judgment should be collected and in view of the hardship which the city would suffer if required to raise by taxation the full amount of the judgment by one assessment it was justified in requiring that the necessary sum should be raised by spreading the tax over a number of years. (*East St. Louis* v. *Amy*, 120 U. S. 600.) Moreover, the county in its brief states: " The county does not expect that the total amount of the judgment shall be provided for in the appropriation for the coming year, but certainly the county is entitled to have appropriations made over a series of years."

The judgment in favor of the county of Nassau for $433,760.68 should be affirmed, without costs. In other respects the judgment should be reversed and the case remitted to the Special Term to proceed in accordance with this opinion, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.