COUNTY OF DUTCHESS, Appellant, v CITY OF BEACON, Respondent.

Second Department, October 7, 1985

### APPEARANCES OF COUNSEL

*Stephen J. Wing, County Attorney* (*Adina C. Gilbert* of counsel), for appellant.

*Milton L. Epstein* for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

On this appeal we are called upon to decide whether the defendant City of Beacon is required to pay to the plaintiff County of Dutchess the full amount of the taxes certified by the county upon property situated within the city or only that portion of the taxes actually collected by the city on behalf of the county. We conclude that the Beacon City Charter imposes upon the city the duty of paying the entire amount of the tax warrant issued by the county notwithstanding that the amount collected was less than the amount of the tax warrant. Accordingly, Special Term's order, insofar as it denied the county's motion for partial summary judgment only on the issue of liability, should be reversed, and an assessment of damages should be conducted.

The facts are essentially undisputed. Both parties to this action are municipal corporations duly organized and existing under the laws of New York State. For each of the years 1971 through 1980, the county duly issued a warrant to the city's Commissioner of Accounts certifying the amount of county and

other taxes to be collected from the taxable property within the City of Beacon. Each warrant directed the Commissioner to collect and "to pay over to the Treasurer or appropriate County Officer" the total amount specified in the warrant by a certain date.

The county commenced this action on or about August 19, 1980, to recover certain unpaid taxes alleged to be due and owing by the city under the warrants issued during the years 1971 through 1975 and 1977 through 1980. Defendant answered, *inter alia,* that the city had "fully complied with the command of the warrant" in that it had remitted to the county the entire amount of tax moneys *actually collected* by it. Thereafter, the county moved for summary judgment only as to the issue of liability, contending that the provisions of both the Beacon City Charter and the Real Property Tax Law require that the city remit to the county the full amount of taxes specified in the warrant, regardless of the amount actually collected. The city cross-moved for summary judgment dismissing the complaint, essentially arguing that it was under no duty to remit to the county more tax moneys than it actually collected. Special Term denied the respective motions for summary judgment, finding that "[t]he affidavits are conflicting and there are issues of fact in dispute that are appropriately resolved at a trial". The county has appealed from so much of said order as denied its motion.

At the outset, we note that summary judgment is appropriate at this juncture as there are no disputed factual issues other than the amount of damages (*see,* CPLR 3212 [c]; *Andre v Pomeroy,* 35 NY2d 361; *Krupp v Aetna Life & Cas. Co.,* 103 AD2d 252, 261-262; *Novick v Sun Oil Co.,* 103 AD2d 800). The dispositive issue in this case is the proper judicial construction of the Beacon City Charter, which, according to the county, requires the city to remit the entire amount of the taxes listed in the aforementioned warrants.

Beacon City Charter § 79 provides: "The board of supervisors shall certify to the commissioner of finance the amount of taxes for state and county purposes assessed upon the city, and the commissioner of finance shall extend and apportion said taxes on the assessment-roll, together with the city taxes as herein provided" (L 1913, ch 539). Under this section, the Board of Supervisors of the City of Beacon certifies a State and county tax levy to the City of Beacon's Commissioner of Finance, who in turn extends and apportions these taxes on the assessment roll together with the city taxes. The City Commissioner, therefore,

acts in place of the county in extending, apportioning, and ultimately collecting these taxes in the city. Section 79 is silent as to whether the city is obligated to remit to the county the entire amount certified or the amount collected.

Although there appears to be no case law interpreting this section of the Beacon City Charter, reference to cases interpreting similar provisions in other city charters is instructive. In *Matter of County of Oswego v Foster* (262 NY 439), the Court of Appeals was called upon to determine whether the City of Fulton, pursuant to its charter, was obligated to remit the full amount of the State and county taxes apportioned to it or the amount it actually collected. Preliminarily, the court observed that "In accordance with the provisions of the charter of the city of Fulton (Laws of 1902, ch. 63, § 243), the board of supervisors at its annual session in the fall of 1931 did not cause the State and county tax apportioned to the city of Fulton to be spread upon any tax roll of property within said city, as is the procedure generally in accordance with the provisions of section 59 of the Tax Law (Cons. Laws, ch. 60), *but in accordance with the provisions of [section 243 of its] charter* by resolution certified the total amount of tax to be levied in the city for State and county purposes to the common council of the city of Fulton" (*Matter of County of Oswego v Foster, supra,* at p 440; emphasis added).

The charter provided that the City of Fulton was to apportion and collect taxes on behalf of the county (*Matter of County of Oswego v Foster, supra,* at pp 440-441). The charter also provided that the City Chamberlain was required to "pay over to the treasurer of Oswego county * * * all moneys received by him for county and State taxes" (*Matter of County of Oswego v Foster, supra,* at p 441), and that he "show that he has duly settled with the county treasurer for state and county funds" (*Matter of County of Oswego v Foster, supra,* at p 442).

On the basis of these charter provisions, the Court of Appeals concluded that,

"The city of Fulton, by its charter, has placed itself in the same position that counties are placed in under the general statutes in relation to the State. The county does not collect the State and county tax from individuals. It collects it from the city. *The amount charged against the city is due from the city whether the city collects it or not. The city is bound to make up any deficiency in the collections, if it does not collect the amount charged against it * * *

"In the absence of a plain expression that the city of Fulton shall be relieved of all liability except for taxes specifically collected from individuals for State and county purposes we must decline to imply such a radical departure from the general rule. We uphold the policy which requires the city to pay over to the county the amount of the State and county tax in full from the first moneys received by it on the tax levy. The city may then reimburse itself by collecting the tax, or by borrowing money in anticipation of such collections" (*Matter of County of Oswego v Foster, supra,* at p 443; emphasis added).

Similarly, in *Matter of Seneca Hotel Corp. v Board of Supervisors* (19 AD2d 183, 185), the Fourth Department, relying on *Matter of County of Oswego v Foster (supra)*, stated: "Under section 132 of the Charter of the City of Geneva * * * the city is responsible for the collection of the county taxes upon property within the city. Under the charter provision, the county certifies to the city the total county tax upon property located within the city and the levy of the county taxes upon individual properties is then made by the city and the city pays over the taxes collected by it to the county. Under a provision of this type, it has been held that the city must bear the loss, if the taxes turn out to be uncollectible, *since the machinery for the collection of the county taxes on property within the city is placed entirely under the control of the city*" (emphasis added).

*Matter of County of Oswego v Foster (supra)* was also relied upon by the Attorney-General, whose opinion was requested concerning the return of State and county taxes to the County Treasurer by the City of Mechanicville. In rendering his opinion, the Attorney-General had to construe Charter of the City of Mechanicville § 78 which was identical in all material respects to the provision in issue herein. The Attorney-General was of the view that section 78 " 'requires the city to pay over to the county the amount of the State and county tax *in full* from the first moneys received by it on the tax levy. The city may then reimburse itself by collecting the tax, or by borrowing money in anticipation of such collections' " (Taxes — Charter of City of Mechanicville, 59 NY St Dept Rep 265, quoting from *Matter of County of Oswego v Foster, supra,* at p 443; emphasis added). The Attorney-General found significant the absence of a "provision in the charter of the city of Mechanicville limiting its liability for state and county taxes" (Taxes — Charter of City of Mechanicville, *op. cit.,* at 265-266).

Based upon the foregoing, we are convinced that where, as here, a city's charter evinces an intent that the city act on behalf

of the county in extending, apportioning, and collecting State and county taxes within the city's borders, the city is legally obligated to pay the full amount of the taxes regardless of the amount actually collected (*see, People ex rel. Hunter Arms Co. v Foster,* 247 App Div 619, 621). The city is responsible for the full amount "since the machinery for the collection of the county taxes on property within the city is placed entirely under the control of the city" (*Matter of Seneca Hotel Corp. v Board of Supervisors, supra,* at p 185, citing *Matter of County of Oswego v Foster, supra,* and *Town of Amherst v County of Erie,* 260 NY 361).

In the matter *sub judice,* the Beacon City Charter has placed the machinery for the collection of taxes under the control of the city. This conclusion is compelled by the explicit language of Beacon City Charter § 79, quoted above, as well as by Beacon City Charter § 118 (L 1915, ch 547) which states that "[w]henever any person or corporation shall refuse or neglect to pay any tax or assessment now or hereafter assessed by the city * * * the same may be collected by action in the name of the city against any such person or corporation". Moreover, Beacon City Charter § 121 (L 1915, ch 547) provides that "[w]henever any tax, penalty or interest, shall remain unpaid * * * the commissioner of accounts shall thereupon advertise and sell the land upon which the same was imposed, for the payment of such tax". Therefore, the City of Beacon not only has the power to control the machinery for the collection, but also has the power to enforce the payment of delinquent taxes through legal action or the sale of the subject realty (*see, City of Beacon v Bernstein Realty Corp.,* 185 Misc 262). Thus, contrary to the city's contention, we find that the result is fair and equitable. The city charter, in addition to vesting in the city the machinery for the collection of county taxes, has reserved for the city the right to legally pursue and obtain payment of delinquent taxes. Accordingly, it is appropriate to impose absolute liability on the city for uncollected taxes, if any.

In addition, the City of Beacon has the power to relieve itself of this obligation in the future by amending its charter to include a specific provision therein to that effect (*see, Matter of County of Oswego v Foster,* 262 NY 439, *supra; County of Rensselaer v City of Troy,* 102 AD2d 976). For example, in *County of Nassau v City of Long Beach* (272 NY 260), the Court of Appeals discussed the effect of certain amendments to the Charter of the City of Long Beach. Those provisions provided, *inter alia,* that the county would have a lien on all State and county taxes and that the county would receive a certificate of

sale if property within the city were sold for nonpayment of taxes. Most important, the charter was amended to provide that "the liability of the city to the county shall be discharged to the extent of the amount of uncollected taxes heretofore levied which represents state and county taxes" (*County of Nassau v City of Long Beach, supra,* at p 265). The court sustained the prospective application of this amendment as a proper exercise of legislative power and discretion. Once a city charter is amended to give tax enforcement rights to the county and to specifically limit the city's tax liability, the city will be liable only for those amounts it actually collects (*County of Nassau v City of Long Beach,* 274 NY 458, 460).

In the event that the City of Beacon amends its charter to relieve itself of absolute liability for uncollected taxes, the County of Dutchess may choose, pursuant to Real Property Tax Law § 972, to designate itself as the agent for the collection of taxes (*see, County of Orange v City of Newburgh,* 68 Misc 2d 998). Thus, the county could protect itself against irreparable harm if the charter is amended.

In light of our disposition, namely, that pursuant to its own charter, the City of Beacon is obligated to remit to the county the full amount of the tax warrants, we need not pass upon the challenge to the constitutionality of Real Property Tax Law article 9 (*see, People v Sailor,* 65 NY2d 224; *In re Grand Jury Subpoena [Simels],* 767 F2d 26).

Accordingly, Special Term's order should be reversed insofar as appealed from, plaintiff's motion for partial summary judgment granted, and the matter remitted to the Supreme Court, Dutchess County, for an assessment of damages.

BRACKEN, NIEHOFF and RUBIN, JJ., concur.

Order of the Supreme Court, Dutchess County, dated March 7, 1984, reversed insofar as appealed from, without costs or disbursements, plaintiff's motion for summary judgment granted, and matter remitted to the Supreme Court, Dutchess County, for an assessment of damages.